Reese *v.* Cox.

5-1703                                          317 S. W. 2d 135

Opinion delivered November 3, 1958.

Sam Sexton, Jr. and *Ralph W. Robinson,* for appellant.

*Batchelor & Batchelor,* for appellee.

Sam Robinson, Associate Justice. In 1914 appellee, J. B. Cox, and his sister, Josephine, purchased 40 acres of land which was conveyed to them jointly. Title to an undivided one-sixth interest in 20 acres of this land is involved in this appeal. At this point it may be helpful to identify the parties to this action and their relatives who appear in the record. Josephine Cox, Marie Cox, Eugene Cox and the appellee, J. B. Cox, were brothers and sisters. Josephine died in 1934, leaving one child, Savannah, who is the appellant. Arizona Cox is the wife of J. B. Cox. Savannah Reese, the appellant, daughter of Josephine Cox, is in possession of and is the undisputed owner of the west 20 acres of the original 40 acres purchased by her mother, Josephine, and her uncle, J. B. Cox. She claims, however, that she also owns a one-sixth interest in the east 20 acres. This appeal is from a decree holding that J. B. Cox is the owner of the entire east 20 acres.

While J. B. Cox was in the Army during the first World War, in the fall of 1918 or spring of 1919, Josephine had a fence constructed from north to south, dividing the 40 acres in half. It appears that from then on, Josephine was in possession of and claimed title to the west 20 acres of the 40, and J. B. was in possession of and claimed title to the east 20; Josephine built a house on the west 20, and her daughter, Savannah, the appellant in this case, has lived on the west 20 for more than 30 years. It appears from a preponderance of the evidence that in 1934, in anticipation of not living much longer, Josephine, wanting to save the west 20 acres for the benefit of her daughter, Savannah, but being apprehensive of Savannah's dissipating the property at that time, conveyed her interest in the 40 acres to her spinster sister, Marie, with the understanding that Marie would save the property for the use and benefit of Savannah. Marie died in 1949 without having actually conveyed the property to Savannah.

Although it appears that the 40 acres had not been divided between J. B. and Josephine by mutual conveyances, it does appear that they both considered that J. B. owned the east 20 and Josephine owned the west 20. The east 20 joined J. B.'s home place. He had possession of the east 20, farmed a part of it, pastured part of it, put a stock pond on it, planted fruit trees, made a garden, and treated it as his own, and it was fenced to itself. Likewise, the west 20 was fenced, and Josephine built a house thereon and occupied it. It is not likely that she would have built a house on land that she did not consider her own. Marie died in 1949, without having actually conveyed the property to Savannah, but it was realized by Savannah that she had an interest in the property, and she lived on it without paying rent to anyone. She wanted to build a new house on the west 20 acres, but it appeared that the property had descended from Marie to J. B., Eugene and Savannah, and at Savannah's request J. B. and his wife, Arizona, and Eugene all executed a deed to Savannah to the west 20 acres of the 40. Savannah claims that the consideration

for this conveyance was her action in getting a job for Arizona, but her testimony in that respect is not convincing. On direct examination she testified:

"Q. Do you claim the west 20 acres as your property?

A. Well, I do.

Q. How do you claim that?

A. Well, they gave me — after my auntie died, they gave me a deed to it, but I knew all the time that I had an interest in her part of it after she passed away."

It appears that all the interested parties considered all along that the west 20 acres belonged to Savannah; that her mother, Josephine, had left it with Marie in trust for Savannah. Therefore, without hesitation J. B., his wife, Arizona, and Eugene gave Savannah a deed to the west 20 acres without any consideration whatever.

But Savannah says that as an heir of Marie she owns a one-third interest in an undivided one-half of the 20 acres that had been in the possession of J. B. for about 40 years. J. B. contends that Josephine gave him a deed to the east 20 acres in 1919 and that the deed was lost without having been placed of record. The evidence of a lost deed is very weak and we do not believe that J. B. could prevail on that theory. But we do think that the evidence is overwhelming to the effect that since 1919 he has been in possession of and has claimed to be the owner of the east 20 acres of the 40 acres, and that Savannah has known all along that J. B. claimed to own the east 20 and that her mother, Josephine, claimed to own the west 20.

During the years from 1934 to 1948, inclusive, J. B. paid the taxes on the entire 40 acres, and Savannah reimbursed him for one-half thereof. In 1949 Savannah paid the taxes and J. B. reimbursed her. Subsequent to 1949, which was the year J. B., Eugene and Arizona executed to Savannah a deed to the west 20

acres, Savannah has paid the taxes on the west 20 acres and J. B. has paid on the east 20 acres. Appellant attaches much significance to the fact that at one point in his testimony J. B. stated that prior to 1956 he made no claim that Savannah owned no interest in the east 20 acres. We do not think the witness' testimony is fairly open to the construction placed on it by appellant. It is perfectly clear from his testimony as a whole that J. B. has claimed title to the east 20 acres since 1919. We do not think there is a shadow of a doubt that his reason for not demanding a deed from Savannah to the east 20 acres at the time he executed a deed to her to the west 20 acres was that he thought he owned the east 20 acres and no deed from her was required, but a deed to Savannah was necessary to give her record title to the west 20 acres because of the deed from Josephine to Marie. Moreover, it is highly significant that at the time, in 1949, when Savannah requested a deed to the west 20 acres, she made no claim to any interest in the east 20 acres. Nor does Eugene, as an heir of Marie, the same as Savannah, make any claim to ownership of any interest in the east 20 acres, but says that the entire 20 acres belongs to J. B.

Appellant points out, and we agree, that ''where the adverse claimant has entered as a tenant in common, it is necessary for such claimant to give notice, either actual or by unmistakable acts, to his cotenants that he is holding adversely, or the statute will not run against such cotenants.'' See *Woolfolk* v. *Davis*, 225 Ark. 722, 285 S. W. 2d 321. In the case at bar the evidence is completely convincing that Savannah knew for more than seven years before this action was commenced that her uncle, J. B. Cox, was claiming to be absolute owner of the east 20 acres. In *Jones* v. *Morgan*, 196 Ark. 1153, 1158, 121 S. W. 2d 96, we said: ''It is true there is no testimony that Morgan ever said to his sister or brothers, or to those claiming through them, 'I am claiming this land as my own; I deny your interest in it; take notice of my attitude!' Nothing of this kind occurred; and yet, for more than thirty years, his conduct, his situa-

tion, and his actions in dealings affecting the property, were tantamount to a declaration of hostility to the claims of all persons . . . (including those) descending from the Morgans."

Affirmed.